2019 IL App (2d) 190563-U
No. 2-19-0563
Order filed November 4, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re M.H., X.H., and K.H., Minors, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County |
| | ) | |
| | ) | Nos.  17-JA-309 |
| | ) | 17-JA-310 |
| | ) | 17-JA-313 |
| | ) | |
| | ) | Honorable |
| (The People of the State of Illinois, Petitioner- | ) | Francis M. Martinez, |
| Appellee, v. Billy H., Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices Jorgensen and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial court correctly determined that respondent's incarceration prevented him from discharging his parental responsibility; while respondent made significant efforts under the circumstances to rehabilitate himself, trial court did not err in finding that termination of best interests of his parental rights was in the minors' best interests.

¶ 2                              I. INTRODUCTION

¶ 3    Respondent, Billy H., appeals orders of the circuit court of Winnebago County finding that he is an unfit parent and that it was in the best interest of the minors, M.H., X.H., and K.H. that his parental rights be terminated.  For the reasons that follow, we affirm.

¶ 4                                    II. BACKGROUND

¶ 5     The minors were taken into protective custody on September 26, 2017, after two were injured in an automobile accident. An investigator from the Department of Children and Family Services (DCFS) observed that they were dirty and poorly cared for. Respondent was incarcerated at this time, serving a six-year sentence based on convictions of armed habitual criminal, a class X offense (720 ILCS 5/24-1.7(a) (West 2014)), and aggravated driving under the influence of alcohol (625 ILCS 5/11-501(d)(2)(b) (West 2014)). His projected parole date is January 30, 2020. He had previously been convicted of forgery for which he was sentenced to two years' imprisonment (720 ILCS 5/16-25(a)(1) (West 2012)), aggravated driving under the influence of alcohol for which he was sentenced to 18 months' imprisonment (625 ILCS 5/11-501(d)(2)(b) (West 2012)), possession with intent to deliver cannabis for which he was sentenced to two years' imprisonment (720 ILCS550/5(d) (West 2010)), and criminal damage to property for which he was sentenced to 18 months' imprisonment (720 ILCS 5/21-4(a) (West 2008)). In all, respondent had "a total of 37 charges and 12 convictions, including 3 convictions related to dangerous drugs and 3 convictions related to weapons offenses."

¶ 6     Respondent has been cooperative with services. He reported a "long history of alcohol use," and he completed a substance-abuse class offered by the prison in 2016. He agreed to participate in and completed the "Inside Out Dads" program offered at the Danville Correctional Center. Respondent reported that he completed a substance-abuse class at Danville and that he has attended AA meetings (he submitted proof that he attended seven such meetings). He has maintained contact with DCFS and wrote to the minors on a regular basis. Domestic violence counseling had been recommended, but had not yet been completed, as it is not offered where

respondent is incarcerated. When respondent was transferred to a work camp where AA meetings were not available, respondent met with the chaplain to address his sobriety.

¶ 7     The trial court found that respondent was unfit on two bases—repeated incarceration and depravity. As to the former basis, it noted that respondent has been "repeatedly incarcerated during the lives of these minors" and it has "prevented him from exercising his parental responsibilities and supporting the minors for being a father figure essentially." As to M.H., respondent had been incarcerated for her entire life. Regarding the latter basis, the trial court noted that "[t]he State has also proven depravity by clear and convincing evidence in that they have [*sic*] submitted sufficient certified convictions for felonies that trigger the presumption by clear and convincing evidence that [respondent] is a depraved individual by statutory definition." The evidence submitted by respondent was not sufficient, the trial court found, to rebut this presumption.

¶ 8     The proceeding then moved to the best-interests phase. Philip Goudreau, a "permanency worker and foster care caseworker at Children's Home & Aid" testified. He is the minors' caseworker. They are currently placed in a foster home in Rockford. They live there with their foster parents, two of the foster parents' biological children, and their other siblings who were placed there as the result of a separate case (there are, in fact, six siblings, who are all placed with the foster parents). Goudreau visits twice per month. He finds it safe and appropriate. The children have clean clothes and adequate, healthy food. The minors are comfortable interacting with the foster parents and have an "affectionate relationship." They are involved in the community and various activities. The minors have a relationship with the foster parents' extended family; they are close to the foster parents' oldest daughter, who no longer resides at the home but sometimes provides childcare.

¶ 9      The minors have occasional contact with their biological mother, which the foster parents try "to facilitate, as much as possible." Goudreau added, "She is invited to, you know, special occasions, family events, birthdays, holidays." They have not had "physical visitation with their biological father, but they are able to receive letters from him." They have not yet written back due to their young age. The foster parents are "very much" willing to allow the minors to have contact with their biological parents.

¶ 10      Goudreau, acknowledging that the minors were "relatively young," related that they state that they love the foster parents and want to remain with them. The foster parents are willing to adopt all of the minors. Goudreau was not aware of anyone else willing *and able* to parent the minors. He opined that it was in the minors' best interests that respondent's parental rights be terminated.

¶ 11      On cross-examination, Goudreau agreed that the minors sometimes speak of their biological mother. On redirect-examination, Goudreau stated that respondent writes letters to the minors. He has reviewed the letters and they are appropriate. He was unaware whether there was any contact between the minors and respondent's extended family. On cross-examination by the attorney for CASA, Goudreau testified that the minors interact with the foster parents' biological children like siblings.

¶ 12      Respondent addressed the court and expressed a desire to maintain a relationship with the minors.

¶ 13      The trial court then found that it was in the minors' best interests to terminate respondent's parental rights. It noted that the minors had bonded with the foster parents, who were providing for the minors' needs. The foster parents have nurtured and provided stability to the minors. The

trial court also noted that all six children from the minors' biological family were now placed with the foster parents. Respondent now appeals.

¶ 14                                         III. ANALYSIS

¶ 15    On appeal, respondent raises two main issues. First, he contends that the trial court's decision that he is unfit due to depravity and repeated incarceration is contrary to the manifest weight of the evidence. Second, he alleges error in the trial court's finding that it was in the minors' best interests to terminate his parental rights.

¶ 16                                         A. FITNESS

¶ 17    As noted, the trial court found respondent unfit on two distinct bases. A proper finding of unfitness on any single basis is sufficient to sustain the trial court's judgment that respondent is unfit. *In re Tiffany M.*, 353 Ill. App. 3d 883, 820 (2004). Hence, if we affirm the trial court's decision on one ground, we need not consider the other. We review a trial court's determination on this issue using the manifest-weight standard. *In re J.J.*, 201 Ill. 2d 236, 249 (2002). Thus, we will reverse only if an opposite conclusion is clearly apparent. *Id*.

¶ 18    Section 1(D)(s) of the Adoption Act (750 ILCS 50/1(D)(s) (West 2018)) defines an unfit parent as follows:

> "The child is in the temporary custody or guardianship of the Department of Children and Family Services, the parent is incarcerated at the time the petition or motion for termination of parental rights is filed, the parent has been repeatedly incarcerated as a result of criminal convictions, and the parent's repeated incarceration has prevented the parent from discharging his or her parental responsibilities for the child."

5

In accordance with this subsection, it is not enough that a parent be repeatedly incarcerated to be found unfit; rather, the incarcerations must have prevented the parent from discharging his or her parental responsibilities. *In re Gwynne P.*, 215 Ill. 2d 340, 355 (2005).

¶ 19    Respondent does not contest the fact that he was frequently incarcerated. Instead, he argues that the trial court erred in determining that his repeated incarcerations prevented him from discharging his parental responsibilities. He first points out that there is nothing in the statute that indicates that parenting must "be on a face-to-face basis." He asserts that his "significant efforts in complying with his caseworker's recommendations" show his "determination to succeed." He further points to his communication and cooperation with his caseworker, his documented attendance at AA meetings, and his completion of the "Inside Out Dads Parenting Program."

¶ 20    Indeed, respondent's efforts at rehabilitation are commendable. However, the question here is what effect respondent's incarcerations have had on his "capacity to provide financial, physical, and emotional support for the child[ren]." *In re M.C.*, 2018 IL App (4th) 180144, ¶ 25. While his communications with the minors may have provided some emotional support, it is not apparent how they provided financial or physical support. Our supreme court has explained, "Section 1(D)(s), no doubt, is applicable in situations where the parent, during the lifetime of the child, has had recurring absences caused by incarcerations which have prevented the parent from providing his or her child with a stable home environment." *In re D.D.*, 196 Ill. 2d 405, 420 (2001). Clearly, respondent's incarcerations have made it impossible to provide a stable home life for the minors here.

¶ 21    In sum, we cannot say that an opposite conclusion is clearly apparent to the trial court's determination that respondent's repeated incarcerations have prevented him from providing for the minors. Having determined that the trial court's decision on this ground of unfitness is not contrary

to the manifest weight of the evidence, we need not consider whether respondent is also unfit on the ground of depravity.

¶ 22                              B. BEST INTERESTS

¶ 23    Respondent next argues that the trial court erred in determining that it was in the best interests of the minors to terminate his parental rights.  After a finding of unfitness, a court must consider whether it is in the best interests of a child to terminate a parent's rights.  *In re Tiffany M.*, 353 Ill. App. 3d 883, 891 (2004).  The burden is on the State to prove by a preponderance of the evidence that termination is in the child's best interests.  *Id*.  Whether termination is in a minor's best interests is reviewed using the manifest-weight standard.  *Id.* at 892.

¶ 24    At this stage of the proceedings, a parent's interest in maintaining a relationship with the minor must yield to the minor's best interests in a stable home life.  *M.C.*, 2018 IL App (4th) 180144, ¶ 34.  Section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2018)) sets forth the following 14-factor balancing test to guide the best-interests determination:

"Whenever a 'best interest' determination is required, the following factors shall be considered in the context of the child's age and developmental needs:

(a) the physical safety and welfare of the child, including food, shelter, health, and clothing;

(b) the development of the child's identity;

(c) the child's background and ties, including familial, cultural, and religious;

(d) the child's sense of attachments, including:

(i) where the child actually feels love, attachment, and a sense of being valued (as opposed to where adults believe the child should feel such love, attachment, and a sense of being valued);

7

(ii) the child's sense of security;

(iii) the child's sense of familiarity;

(iv) continuity of affection for the child;

(v) the least disruptive placement alternative for the child;

(e) the child's wishes and long-term goals;

(f) the child's community ties, including church, school, and friends;

(g) the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures and with siblings and other relatives;

(h) the uniqueness of every family and child;

(i) the risks attendant to entering and being in substitute care; and

(j) the preferences of the persons available to care for the child."

In making its ruling, a trial court need not explicitly reference each factor. *In re Nevaeh R.*, 2017 IL App (2d) 170229, ¶ 27.

¶ 25    Respondent points to subsection 1-3(4.05)(a), which concerns the safety of the minors and correctly observes that he has never been deemed a danger to the children.  We agree with this observation.  He also relies on subsection 1-3(4.05)(d)(iv), which is the "continuity of affection for the child."  The State points out the trial court could have reasonably found that this factor favored termination, because returning the minors to respondent would separate them from certain of the six siblings placed in the foster home, as some of those children are not respondent's biological children.  Respondent also relies on subsection 1-3(4.05)(i), the risks attendant to substitute care; however, as the State points out, respondent is not due for parole until January 20, 2020, and only then could he start trying to establish a stable home for the children.

¶ 26    More fundamentally, respondent identifies only three factors that are part of a 14-factor balancing test. Other factors, including the minors need for permanence and stability, their community ties, and their sense of familiarity and security, weigh in favor of the trial court's decision. Though some evidence supports respondent, other evidence does not. Under such circumstances, we simply cannot say that an opposite conclusion to the trial court's is clearly apparent.

¶ 27                                IV. CONCLUSION

¶ 28    In light of the foregoing, the judgment of the circuit court of Winnebago County is affirmed.

¶ 29    Affirmed.